## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROGER SHULER and CAROL SHULER,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Case No.:  2:16-CV-0501-VEH** |
| | ) |
| **LIBERTY DUKE, et al.,** | ) ) |
| **Defendants.** | ) |

---

## CORRECTED MEMORANDUM OPINION

### I.    BACKGROUND

Roger Shuler ("Roger") and Carol Shuler ("Carol") (collectively,

"Plaintiffs"), filed this lawsuit on March 26, 2016, against twenty-two defendants:

Francois Blaudeau, Chris Blevins, Campus Crest Communities, Christina Crow,

Chris Curry, Mike DeHart, Liberty Duke, Google, Keith Jackson, Jinks Crow &

Dickson, McMichael & Parrish Homes, Jeremiah Mosley, Jay Murrill, Zac Parrish,

William H. Pryor, Rob Riley, Riley Jackson LLC, Michelle Rollins, Ted Rollins,

Rollins Jamaica LTD, TXG Capital, and Jason Valenti. (Complaint, doc. 1) On

September 27, 2017, Plaintiffs filed their Amended Complaint (doc. 26), which is

therefore the operative document before this Court. The Amended Complaint

asserts claims against the original twenty-two defendants, and, for the first time,

asserts claims against the following additional eight (8) defendants: Luther Strange, Harrison Street Real Estate/Campus Crest Communities, Jessica Medeiros Garrison, William E. Swatek, Watercrest Group, Valeo Groupe, David Gespass, and Claud Neilson. According to CM/ECF, all but three of the defendants have appeared.[1] Two of those defendants–Harrison Street Real Estate/Campus Crest Communities and Watercrest Group–who have not appeared were not named in the original Complaint, but only in the Amended Complaint. The third non-appearing defendant is identified on CM/ECF as Campus Crest Communities and was named in the original Complaint.[2]

The Amended Complaint is a model of "mud throwing" by the Plaintiffs, together with conclusory allegations but very few relevant facts. It is also classically "shotgun" in nature, a practice that has been repeatedly condemned by the Eleventh Circuit. *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th

---

[1] On August 24, 2017, this case was reassigned to the undersigned judge. (Doc. 24).

[2] In the case caption of their Amended Complaint (doc. 26 at 1), Plaintiffs do not identify Campus Crest Communities as a separate defendant from Harrison Street Real Estate/Campus Crest Communities. Additionally, Plaintiffs provided address information for service pertaining to Defendant Harrison Street Real Estate/Campus Crest Communities only. (Doc. 26-1 at 3). Consequently, it appears that Plaintiffs intended to replace Defendant Campus Crest Communities with Defendant Harrison Street Real Estate/Campus Crest Communities. However, a resolution of that issue is unnecessary as the following analysis supports a dismissal of all claims brought by Plaintiffs against either or both entities.

Cir. 1997); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Nonetheless, defendants have filed motions to dismiss the claims against them. Plaintiffs have responded and replies have been filed. Accordingly, the motions are ripe for determination.[3]

The Court will first set out the applicable standards. It will then analyze each of the Counts of the Amended Complaint. For the reasons set out below, the Court finds that all claims in all Counts are due to be dismissed with prejudice as to all defendants.

## II.  STANDARDS

### A.  28 U.S.C. § 1915(E)(2)(B)

Because Plaintiffs are proceeding *in forma pauperis*, the Court reviews the Amended Complaint under 28 U.S.C. § 1915(e)(2)(B).[4] That statute instructs the Court to dismiss an action brought by an in forma pauperis plaintiff if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or

---

[3] Defendant Swatek filed a Motion for More Definite Statement (doc. 56) on December 19, 2017. Then, on January 5, 2018, he filed a Motion To Dismiss (doc. 84). In light of the Motion To Dismiss (doc. 84), the Court terms to Motion for More Definite Statement (doc. 56) as **MOOT**.

[4] 28 U.S.C. § 1915(e)(2)(B)(ii) provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]" (emphasis added). Upon such a finding, even a *sua sponte* dismissal is proper. *See Jossie v. CVS Pharmacy*, No. 17-12856, slip op. at 2 (11th Cir. May 24, 2018) (finding no error in district court's *sua sponte* dismissal of amended complaint based upon the mandatory nature of § 1915(e)(2)(B)(ii)).

"seeks monetary relief against a defendant who is immune from such relief." 28

U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.

Ct. 1827, 1831–32, 104 L. Ed. 2d 338 (1989) (discussing frivolity under § 1915).

A claim is frivolous as a matter of law where, *inter alia*, the defendants are

immune from suit, *id*. at 327, 109 S. Ct. at 1833, or the claim seeks to enforce a

right that clearly does not exist. *Id*. Moreover, a complaint may be dismissed under

28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be

granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid

dismissal for failure to state a claim upon which relief can be granted, the

allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "Factual allegations must

be enough to raise a right to relief above the speculative level[.]" *Id*. at 555, 127 S.

Ct. at 1965. That is, the allegations must be a "plain statement possess[ing] enough

heft to sho[w] that the pleader is entitled to relief." *Id*. at 557, 127 S. Ct. at 1966

(second brackets in original) (internal quotations marks omitted). "[L]abels and

conclusions [ ] and a formulaic recitation of a cause of action's elements" are

insufficient grounds for entitlement to relief. *Id*. at 555, 127 S. Ct. at 1965.

However, when a successful affirmative defense ... appears on the face of a

complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*,

549 U.S. 199, 215, 127 S. Ct. 910, 920–21, 166 L. Ed. 2d 798 (2007).

The Court gives a *pro se* litigant's allegations a liberal construction by holding them to a more lenient standard than the those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595–596, 30 L. Ed. 2d 652 (1972). However, the Court does not have "license ... to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

### B.    Motion To Dismiss

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint and considers them in the light most favorable to the plaintiff. *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the

complaint: (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Indeed, a district court may dismiss a complaint pursuant to Rule 12(b)(6) based on any affirmative defense where the allegations of the pleading, on their face, show that the defense bars recovery. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

## III. PLAINTIFFS' CLAIMS

The Plaintiffs identify Paragraphs 32 through 53 of their Amended

Complaint as their "Factual Allegations." All of these paragraphs are re-alleged by reference in each of Plaintiffs' fourteen Counts.[5] Rather than repeat these paragraphs as to each Count, the Court will set them out once. The Court will then address each Count, setting out the additional allegations in each. The Court will first discuss Plaintiffs' federal claims (all brought pursuant to 42 U.S.C. § 1983).[6] Finally, the Court will address the claims brought pursuant to Alabama state law.[7]

### A.  Plaintiffs' Factual Allegations (¶¶ 32-53)[8]

32.  On October 23, 2013, Shelby County deputy Chris Blevins entered the Shulers' home at 5204 Logan Drive in Birmingham--and without showing a warrant, saying he had a warrant or even stating his reason for being there-beat up Roger Shuler in his own garage. Blevins shoved Shuler viciously to a concrete floor three times and doused him with pepper spray before dragging him to the driveway, where deputy Jason Valenti threatened to break Shuler's arms. Shuler was placed in the back of a squad car and driven to the Shelby County Jail in Columbiana, where he [was] ... incarcerated....

---

[5] The claims are set out in Counts numbered One through Thirteen. However, there are two counts identified as Count Twelve. Accordingly, there are actually fourteen Counts. The Court will refer to the first Count identified as Count Twelve as such and to the second Count so identified as "Second Count Twelve".

[6] Counts One through Six and Count Thirteen.

[7] Counts Seven through Second Count Twelve.

[8] The Court has used Plaintiffs' language, indicating omissions and alterations. However, the Court has omitted allegations that are totally irrelevant to any claim Plaintiffs assert. (For example, there is no claim (or possible claim) for "wrongful attempted arrest of Carol Shuler" (*see* ¶¶ 33, 42 of Amended Complaint, doc. 26 )). Additionally, this Court did not republish statements the Shulers make in their Amended Complaint that they say caused some of the defendants to file a defamation lawsuit, as the content of those statements is not relevant to any claim made by the Plaintiffs.

35.   Defendants Rob Riley and Liberty Duke (with assistance from the
      Riley Jackson Firm, plus Duke's lawyer, Christina Crow) supposedly
      filed a defamation lawsuit against the Shulers, alleging Roger Shuler
      published false information about the[m]. *** Public records indicate
      Riley and Duke filed the lawsuit somewhere between June and
      October 2015....

36.   Officer Mike DeHart tried to "serve" the Shulers via an unlawful
      traffic stop, falsely claiming Roger Shuler had rolled through a stop
      sign and unlawfully extending the traffic-citation process (by giving
      Riley-related court papers to Shuler), even though there was no hint
      of criminal activity associated with the Shulers' vehicle, which would
      have been the only lawful grounds for extending the stop once
      DeHart had returned Shuler's driver's license, registration, and given
      him a warning.

37.   The Shulers' challenged DeHart's "service" as unlawful, and no
      hearing ever was held where Riley/Duke met their burden to prove
      service had been proper. That means the Shulers were, in fact, never
      lawfully served, and the court never had authority over them or the
      case.

38.   Attorney David Gespass met with Roger Shuler while he was in jail
      and stated in a letter that he had reviewed the ... file, and it showed no
      summons had been issued at the time of attempted service – or at the
      time of Shuler's arrest. Shuler supposedly was arrested for contempt
      of court for failing to appear at a hearing, but the statement from
      attorney Gespass indicates Shuler never had lawfully been summoned
      to court. Gespass' statement also indicates the Shelby County Circuit
      Court, with Claud Neilson serving as judge ... never had personal
      jurisdiction over Shuler. Neilson, however, repeatedly issued
      unlawful orders against Shuler ....

39.   Gespass went on to repeatedly lie to Shuler about the facts and law
      related to incarceration and also made defamatory statements ... to an
      out-of-state attorney, interfering with Shuler's attempts to obtain

counsel. This indicates Gespass became part of a scheme to cover up what happened with Shuler's unlawful arrest and incarceraion.

40.    Rob Riley, Liberty Duke and their attorneys (Defendants Murrill, Crow, Mosley, etc.) had every reason to know the Shulers had not been lawfully served and they had not lawfully been summoned to court. They also had every reason to know that a preliminary injunction in a defamation case [is legally barred]. They also knew that Roger Shulers' [alleged defamatory statements were] accurate. Riley and Duke never sought discovery, never sought a trial, never asked for a jury - actions that indicate they knew they had no genuine defamation case. They simply wanted Claud Neilson to act as one-man censor from the bench, even though Neilson had no personal jurisdiction over the Shulers.

41.    Despite that, Riley, Duke, and their attorneys sought an unlawful preliminary injunction against the Shulers, they sought an unlawful contempt finding against the Shulers, and they asked for the Shulers to be arrested. Roger Shuler, in fact, was arrested....

42.    *** Roger Shuler ... was released from jail on March 26, 2014.

43.    While in jail, Roger Shuler was subjected to a wrongful criminal prosecution. Officer Blevins filed a resisting-arrest charge against Shuler.... *** [District Judge Ron] Jackson found Shuler guilty, meaning Shuler was subjected to probation (suspended sentence) and a fine of $845.

44.    Because of Shuler's unlawful arrest and incarceration, his picture has been published at numerous Web sites, including the one for the Shelby County Jail, suggesting he is a criminal. ***

                                    ***

46.    Alabama Attorney General Luther Strange (now U.S. Senator) ... with assistance from Garrison and Swatek, pushed for Shuler's bogus arrest and incarceration. ***

47.    Garrison, like Riley and Duke, filed a lawsuit against Roger Shuler for reporting [about] her.... Garrison did not seek a trial in her original complaint, never sought discovery or a jury trial, and never proved in an adversarial proceeding that Shuler's reporting was false or defamatory.

48.    Roger Shuler's incarceration ... led to a wrongful foreclosure on the Shulers' home, forcing them to leave Alabama and take up residence in Missouri. That allowed Garrison to pursue her lawsuit, without opposition.... Garrison wound up with a $3.5-million default judgment.... Garrison and Strange got a baseless default judgment, largely because of Roger Shuler's arrest and incarceration, which led to the Shulers' wrongful foreclosure and forced move.

49.    At about the same time of Shuler's incarceration, Campus Crest Communities CEO Ted Rollins engaged in a flagrant defamation campaign against the Shulers via two Web sites - legalschnauzerexposed.com and rogershuler.com. *** The Rollins Web sites referred to Roger Shuler as a "perv ," "liar," and "sicko" and suggested he had sex with cats. They said Shuler had severe mental illness, that he was a physical threat to those around him and suggested multiples times that no company should hire Shuler or his wife, Carol. They referred to Mr. Shuler as a "racist" and a "homophobe."

50.     A witness has reported hearing Michelle Rollins (Ted's stepmother) say that she and Ted were going to "take care of Legal Schnauzer." This indicates the Rollinses and their associates were involved with Roger Shuler's incarceration.

51.    Zac Parrish, Ted Rollins' former stepson, has been listed as founding agent for at least one of the defamatory Web sites. ****

52.    Someone connected to Ted Rollins took out an ad with Google AdSense, promoting Rollins' defamatory Web sites against Roger and Carol Shuler. Google published the ad without doing any investigation about the sites' defamatory content. At least one of Rollins' sites remains on the Web. The other appears to be off the

Web for now, but a search for rogershuler.com brings up a listing that refers to Roger Shuler as "Satan's Earthly Emmissary" (sic).

53.     Ted Rollins also is behind a Web site called tedrollinstruth.com, which accuses Roger Shuler of committing extortion, knowingly printing false information, and being a "convicted cyber bully." The site claims (falsely) that Shuler twice has been incarcerated for slander and was fired from his job at the University of Alabama at Birmingham for "inappropriate behavior" and subsequently threatened the university president.

**B.      Plaintiffs' Federal Law Counts (Counts One - Six, Thirteen)**

All of Plaintiffs' federal law claims are brought pursuant to 42 U.S.C. §

1983, which provides

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (West).

In this section, the Court will first determine which of Plaintiffs' federal

claims are barred — as to certain defendants — by judicial immunity.[9] Next, the

Court will determine which claims are barred by the statute of limitations. As to

the remaining claims, the Court will then determine whether or not they survive

Rule 12(b)(6).

JUDICIAL IMMUNITY

A judge has absolute judicial immunity for acts performed in the exercise of

his judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Like other

forms of official immunity, judicial immunity is an immunity from suit, not just

from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105

S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985). Accordingly, judicial immunity is not

overcome by allegations of bad faith or malice, the existence of which ordinarily

cannot be resolved without engaging in discovery and eventual trial. *Pierson v.*

*Ray*, 386 U.S. at 554, 87 S. Ct. at 1218 ("[I]mmunity applies even when the judge

is accused of acting maliciously and corruptly[.]"); *see also Harlow v. Fitzgerald*,

457 U.S. 800, 815-19, 102 S. Ct. 2727, 2736-39, 73 L. Ed. 2d 396 (1982)

(allegations of malice are insufficient to overcome qualified immunity). Judicial

officers are also entitled to absolute immunity from claims for injunctive relief

---

[9] Defendant Claud Neilson is identified as "a retired judge, whom the Alabama Supreme Court designed [sic] to preside over the underlying case at the heart of this lawsuit. (Doc. 26 at p. 6 ¶ 31).

"unless a declaratory decree was violated or declaratory relief was unavailable."

42 U.S.C. § 1983.

To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Sparkman*, 435 U.S. at 362. If it is determined that a judge was acting in his judicial capacity, absolute immunity applies, even if "erroneous the act may have been, and however injurious ... its consequences ... may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). For example, judicial immunity is not lost by allegations that a judge conspired with one party to rule against another party. "[A] conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors." *Id*. at 1078. Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that

is not "judicial" in nature. *Sparkman*, 435 U.S. at 360. For example, a judge's use of physical force to evict a person from the courtroom is a nonjudicial act not covered by absolute immunity. *See Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974).

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Sparkman*, 435 U.S. at 356 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly.... A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id*.

<u>STATUTE OF LIMITATIONS</u>

All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). *See also Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989). In Alabama, the two year limitations period in Ala. Code § 6-2-38(*l*) applies to § 1983 actions. *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). The statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *Rozar v. Mullis*, 85 F.3d

556, 561-62 (11th Cir. 1996). Claims based on arrest and/or imprisonment pursuant to legal process accrue on the date of such arrest. *Wallace v. Kato*, 549 U.S. 384, 397, 127 S. Ct. 1091, 1100, 166 L. Ed. 2d 973 (2007) (holding that the statute of limitations for a § 1983 claim seeking damages for false arrest begins to run at the time the claimant becomes detained pursuant to legal process).

<u>ELEMENTS</u>

In order to plead a § 1983 claim, a plaintiff must plead facts to show that the defendant (1) deprived the plaintiff of rights secured by the Constitution or laws of the United States, and (2) that the defendant was acting under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A plaintiff can also bring a § 1983 claim against a private party if the plaintiff alleges facts that, taken as true, show that the private party "conspired or acted in concert with state officials to deprive [the plaintiff] of his civil rights." *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 152 (1970)). This is because "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents" *United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157 (1966).

A plaintiff also must plead and prove an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler County*, 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995). Further, a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). Failure to do so will properly result in dismissal of the action. *Id*.

## 1. **Count One**

This Count is for "Violation of First Amendment (asserted via 42 U.S. Code 1983)". (Amended Complaint at p. 13).

### a. *Defendant Neilson Is Not Subject to Suit*

Initially, the Court notes that Defendant Neilson is absolutely protected from all claims against him (whether based on federal law or on Alabama law) by judicial immunity. Specifically, there are no facts alleged in the Amended Complaint that, taken as true, show that Neilson acted in a clear absence of jurisdiction or outside of his judicial capacity. To the contrary, Plaintiffs' allegations are that Neilson was acting in his capacity as a judge. *See* Doc. 26 at ¶ 31 (Neilson ... is a retired judge, whom the Alabama Supreme Court design[at]ed

to preside over the underlying case at the heart of this lawsuit.") and ¶ 58 (Neilson ... participated in a scheme to cheat the Shulers in court and to knowingly order a false arrest and incarceration of Roger Shuler."). Presiding over a civil lawsuit and issuing orders in it are acts that are quintessentially judicial in nature. *See Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) (reversing denial of judicial immunity). The entire lawsuit (all Counts, including all Alabama state law Counts) will be dismissed with prejudice as to Neilson for this reason.

b. *Count One Is Barred by the Statute of Limitations*

All the acts complained of in Count One necessarily occurred on or before October 23, 2013, because they are all alleged to have resulted in or contributed to Roger's October 23, 2013, imprisonment. And, any claims related to Roger's imprisonment pursuant to legal process had to be filed within two years of that date. *Wallace v. Kato*, 549 U.S. 384, 391-92. This lawsuit was not filed until March 26, 2016. Additionally, the Amended Complaint, filed on September 27, 2017, first asserted claims against Strange, Garrison, Swatek, Gespass, and Neilson. Accordingly, all claims in Count One are barred by the statute of limitations and will be dismissed with prejudice as to all defendants.

**2. <u>Count Two</u>**

This Count is for "Violation of Fourth Amendment (asserted via 42 U.S.

Code 1983)". (Amended Complaint at p. 15). It alleges that the Plaintiffs were subjected to a "traffic stop" (Amended Complaint at ¶ 61) and that "Blevins caused substantial damage to property in the Shulers' garage" (Amended Complaint at ¶ 62). Any such acts necessarily occurred on October 23, 2013, because the only other reference to the Shulers' garage complains of acts that are alleged to have occurred on October 23, 2013 (Amended Complaint at ¶ 32), and the only other reference to a traffic stop relates to attempts to "serve the Shulers via an unlawful traffic stop ... (by giving Riley-related court papers to Shuler)" (Amended Complaint at ¶ 36).[10] Accordingly, all claims in this Count will be dismissed with prejudice as time-barred.

### 3. <u>Count Three</u>

This Count is for "Violation of Fourteenth Amendment (asserted via 42 U.S. Code 1983)". (Amended Complaint at p. 15). This Count also relates to acts which necessarily occurred on or before October 23, 2013, as it refers to the allegedly unlawful preliminary injunction (whose violation by the Shulers resulted in the contempt order that was the legal process for the October 23, 2013, arrest and imprisonment of Roger).

To the extent that this Count refers to an unidentified-in-time defamation

---

[10] The "Riley-related court papers" necessarily preceded Roger's October 23, 2013 arrest.

lawsuit "filed [by Garrison] ... with assistance from Defendants Strange, Swatek, and Pryor", the Court finds that the claims in this Count against Garrison and Swatek have no legal basis because private citizens are not, absent more, subject to suit under 42 U.S.C. § 1983, and Plaintiffs have failed to allege any facts that would supply the "more".

### 4. **Count Four**

This Count is for "False Arrest (asserted via 42 U.S. Code 1983)". (Amended Complaint at p. 16). This Count also relates to acts which necessarily occurred on or before October 23, 2013, because they all are alleged to have culminated in Roger's October 23, 2013, arrest. Accordingly, all claims in Count Four are barred by the statute of limitations and will be dismissed with prejudice.

### 5. **Count Five**

This Count is for "False Imprisonment (asserted via 42 U.S. Code 1983)". (Amended Complaint at p. 17). This Count also relates to acts which necessarily occurred on or before October 23, 2013, because they all are alleged to have culminated in Roger's October 23, 2013, imprisonment pursuant to legal process. Accordingly, all claims in Count Five are barred by the statute of limitations and will be dismissed with prejudice.

### 6. **Count Six**

This Count is for "Excessive Force (asserted via 42 U.S. Code 1983)".

(Amended Complaint at p. 18). This Count also relates to acts which necessarily

occurred on October 23, 2013, because they all are alleged to have occurred

during Roger's October 23, 2013, arrest. Accordingly, all claims in Count Six are

barred by the statute of limitations and will be dismissed with prejudice.

### 7. **Count Thirteen**

This Count is for "Civil Conspiracy (asserted via 42 U.S. Code 1983)".

(Amended Complaint at p. 23). In the absence of any viable underlying federal

claim, it is axiomatic that Plaintiffs have no plausible § 1983 federal civil

conspiracy count. *See GJR Investments*, 132 F.3d at 1370 ("[T]o sustain a

conspiracy action under § 1983 . . . a plaintiff must show an underlying actual

denial of its constitutional rights." (footnote omitted) (citing *Slavin v. Curry*, 574

F.2d 1256, 1262 (5th Cir.), *modified on denial of r'hrg*, 583 F.2d 779 (5th Cir.

1978), *overruled on other grounds by Sparks v. Duval County Ranch Co.*, 604

F.2d 976 (5th Cir. 1979)));[11] *see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,

172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

§ 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009))). Accordingly, with no surviving federal claim to serve as an anchor, all claims in Count Thirteen are implausible and will be dismissed with prejudice.

### C.   Plaintiffs' Alabama State Law Claims

#### 1. <u>Count Seven</u>

This Count is for "Defamation (asserted via Alabama State Law)". (Amended Complaint at p. 18).

> The elements of a cause of action for defamation are:  1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (quoting *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989). "Truth is an absolute defense to defamation...." *Id*. (quoting *Foley v. State Farm Fire & Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986)).

Plaintiffs do not set out the allegedly false and defamatory statements, nor do they identify even the subject-matter of the statements they complain of.

They do not identify when, where, and to whom any statement was published. They do not identify if and how each statement is false. They do not identify how and why the Plaintiffs' reputation was injured.

The closest the Plaintiffs come to identifying the complained-of statements is at paragraph 78, where they state that Roger "continues to suffer economic and emotional damages from his mugshot wrongfully being caused to appear at Web sites, such as *mugshots.com* and *jail.com* — even though his arrest had no basis in law or fact and did not even involve criminal allegations." (Amended Complaint at p. 19). But there is nothing untrue that is alleged here. Plaintiffs themselves state that Roger was arrested and incarcerated. Plaintiffs do not allege that the photo on the Web sites they identify is not indeed the "mugshot" of Roger that was taken at the time of his arrest and incarceration. Further, Plaintiffs fail to allege any facts connecting the defendants as responsible for the content of the Web sites that contain Roger's "mugshot." The facts set out at paragraph 78 are insufficient to cure the inadequacy of the Plaintiffs' claim for defamation.

The balance of this Count also fails. Plaintiffs have wholly failed to plead any facts — as opposed to mere conclusions — to support any of the elements of a claim for defamation under Alabama law. To survive a motion to dismiss, a defamation claim must, *inter alia*, set out or otherwise sufficiently identify the

allegedly defamatory statement and the manner in which it was communicated. Accordingly, all claims in Count Seven will be dismissed with prejudice as to all defendants on this basis.

Additionally, Plaintiffs' claim against Google is based entirely on the fact that "Defendant Google negligently ran an ad promoting defamatory web sites...." (Amended Complaint at p. 19, ¶ 75). This does not even allege that the complained-of ad was itself defamatory. Thus it wholly fails to allege defamation by Google. Even if Plaintiffs had so alleged, as to defendant Google (only), the Court finds that the claim in this Count is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), which states that "[n]o provider ... of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." Accordingly, all claims in Count Seven will be dismissed with prejudice as to defendant Google on this additional and independent basis.

## 2. **Count Eight**

This Count asserts a claim for "Abuse of Process (asserted via Alabama State Law)". (Amended Complaint at p. 20). This claim is subject to a two-year statute of limitations. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically

enumerated in this section must be brought within two years."). "The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998) (citing *Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993)). Abuse of process is a separate claim from malicious prosecution:  "Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued." *C.C. & J, Inc.*, 711 So. 2d at 950. In Alabama, "an abuse of process claim is proper only when the action results in the issuance of some form of special process from the court, such as a writ of garnishment." *Ramsey v. Leath*, 706 F.2d 1166, 1169 (11th Cir. 1983).

To state a viable cause of action for abuse of process, a plaintiff must allege "that a suit had been legally filed for a proper purpose," but once filed, "the process of the court ... had been improperly used." *Ancora Corporation v. Stein*, 445 F.2d 431, 433 (5th Cir. 1971).[12] Where a defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions, an abuse of process claim is not stated. *Willis v. Parker*, 814 So. 2d 857, 863 (Ala.

---

[12] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

2001) (citation omitted).

Here, the Plaintiffs have failed to allege any cognizable abuse of process claim because they "complain[] only about the <u>initiation</u> of [] charges [or lawsuits] against [them], and do[] not mention any <u>subsequent</u> 'special process [that] was improperly issued[.]' " *See Ray v. Calhoun Cty.*, No. 1:13-CV-1860-VEH, 2017 WL 4572290, *6 (N.D. Ala. Oct. 13, 2017) (emphasis in original). Further, any abuse of process claims are time-barred because the charges or lawsuits alleged all were initiated on or before October 23, 2013, and thus more than two years before Plaintiffs initiated this lawsuit. Count Eight will be dismissed with prejudice.

### 3. <u>Count Nine</u>

This Count is for "Assault and Battery (asserted via Alabama state law)". (Amended complaint at p. 20). This claim is subject to a six-year statute of limitations. *See* Ala. Code. § 6-2-34(1); *id.* ("Actions for any trespass to person or liberty, such as . . . assault and battery" "must be commenced within six years") The "touching" complained of in this Count occurred on October 23, 2013. Accordingly, this claim is not time-barred.

However, sheriffs generally enjoy sovereign immunity from suits for damages in their individual capacities for acts they performed in the course and scope of their employment. *See Ex parte Davis*, 930 So. 2d 497, 500–01 (Ala.

2005) ( "[T]his Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment."); *Boshell v. Walker Cnty.*, 598 So. 2d 843, 844 (Ala. 1992) (recognizing that "a sheriff, as an executive officer of the State of Alabama, is immune, under Article I, § 14, of the Alabama Constitution, from suit based on state law claims arising out of the execution of the duties of his office"). Additionally, the Alabama Supreme Court has held that "deputy sheriffs are immune from suit to the same extent as sheriffs," because the deputy sheriff is the "alter ego of the sheriff." *Ex parte Shelley*, 53 So. 3d 887, 891 (Ala. 2009) (citations omitted).

Plaintiffs do not dispute that the defendants (Sheriff Curry, Deputy Sheriff Blevins, and Deputy Sheriff Valenti) were acting in the course and scope of their employment when the complained-of touching allegedly occurred. Moreover, they are all State constitutional officers, and are not subject to exceptions to State-agent immunity. *See Ex parte Purvis*, 689 So. 2d 794, 795–96 (Ala. 1997) (refusing to apply the exceptions to State-agent immunity to claims made against a constitutional officer). Therefore, Count Nine is due to be dismissed with prejudice for the reason that it is a state law claim for monetary damages against these

defendants in their individual capacities and thus is barred by the doctrine of sovereign immunity. *See Ex parte Davis*, 930 So. 2d at 500–01.

### 4. <u>Count Ten</u>

This Count is for "Trespassing (Asserted via Alabama state law)". (Amended Complaint at p. 21). It is asserted solely against Sheriff Curry, Deputy Sheriff Blevins, and Deputy Sheriff Valenti,[13] and necessarily occurred on October 23, 2013. It is not time-barred, as a trespassing claim is subject to a six-year limitations period under Alabama law. *See* Ala. Code § 6–2–34(2) (explaining that "[a]ctions for any trespass to real or personal property" are subject to six-year limitation period); *Motisi v. Alabama Gas Corp.*, 485 So. 2d 1157, 1158 (Ala. 1986) ("Trespass actions are barred after six years.").

However, like Count Nine, Count Ten will be dismissed with prejudice as barred by the doctrine of sovereign immunity.

### 5. <u>Count Eleven</u>

This Count is for "Invasion of Privacy (Asserted via Alabama law)". (Amended Complaint at p. 21). It is asserted solely against Sheriff Curry, Deputy Sheriff Blevins, and Deputy Sheriff Valenti.[14] Invasion of privacy claims are

---

[13] And "other unknown deputies". (Doc. 26 at ¶ 85).

[14] And "other unknown deputies". (Doc. 26 at ¶ 85).

subject to the two-year statute of limitations set out in § 6-2-38(*l*). *See Chambless v. Louisiana- Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) (finding that the statute of limitations for invasion of privacy under Ala. Code § 6–2–38(*l*) is two years). The acts complained of necessarily occurred on October 23, 2013. Accordingly this claim is time-barred. The claim is also barred by the doctrine of sovereign immunity. Count Eleven will be dismissed with prejudice.

### 6. <u>Count Twelve</u>

This Count is for "False Arrest and False Imprisonment (Asserted via Alabama state law)". (Amended Complaint at p. 22). It is asserted solely against Deputy Sheriff Blevins and Deputy Sheriff Valenti. The statute of limitations for false arrest claims is two years. § 6–2–38(*l*); *Jennings v. City of Huntsville*, 677 So. 2d 228, 230 (Ala. 1996). The statute of limitations for claims of false imprisonment is six years. § 6–2–34(1).[15] However, because Roger was imprisoned as a result of his arrest, his claim of false imprisonment is synonymous with his claim of false arrest and therefore the statute of limitations applicable to all his claims in Count Twelve is two years. *See Parrish v. City of Opp*, 898 F. Supp. 839, 843 (M.D. Ala. 1995) (distinguishing imprisonment committed with an arrest from imprisonment

---

[15] Section 6–2–34(1) states: "The following must be commenced within six years: ... Actions for any trespass to person or liberty, such as false imprisonment...."

committed without an arrest and agreeing that a wrongful incarceration following a false arrest "constitute[s] an ill effect from the original false arrest" and thus is "not independently actionable") (some internal quotation marks omitted). Accordingly, all claims in Count Twelve are time-barred. Further, they are also barred by the doctrine of sovereign immunity. Count Twelve will be dismissed with prejudice.

### 7. <u>Second Count Twelve</u>

This Count is for "Intentional Infliction of Emotional Distress (Asserted via Alabama state law)". (Amended Complaint at p. 22). As such, it is actually a claim for outrage. *See, e.g., Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 836 (Ala. 2003) (indicating in passing that claim for intentional infliction of emotional distress is really a claim for tort of outrage); *Harrelson v. R.J.*, 882 So. 2d 317, 321 (Ala. 2003) (describing plaintiff's claim as one for "intentional infliction of emotional distress, *i.e.*, the tort of outrage").

The statute of limitations for this claim is two years. Ala. Code § 6–2–38(*l*). All of the acts complained of in this Count necessarily occurred on October 23, 2013, the date on which Roger was arrested and jailed. Accordingly, this claim is time-barred. Further, the claim is also barred by the doctrine of sovereign immunity. This Count will be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons set out above, all of Plaintiffs' claims against all defendants are due to be dismissed with prejudice. A separate final judgment order will be entered.

**DONE** this the 31st day of May, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge